\* WINOUS POINT SHOOTING CLUB v. HENRY BODI ET AL.

**1. MOUTH OF A RIVER TRIBUTORY TO A LAKE OR BAY.**

The mouth of a river tributory to a lake or open bay, is where the course of the river is checked by such lake or bay, as marked by the sediment deposited by the current, although the waters of such river are affected by the rise and fall of the lake, and although, at certain seasons, no banks appear, for a considerable distance inland, above the water on either side, and at other times only a marsh or lowland growth of vegetation defines the channel.

**2. RIGHTS OF PRIVATE OWNERSHIP EXTEND TO RIVER'S MOUTH.**

The rights of private ownership and every beneficial interest in such river, including the right of trapping and hunting, extend to its mouth, the point above defined.

**3. NAVIGATION AND FISHING EXCEPTED.**

The owners of the land covered by such waters, have exclusive dominion over the same, subject only to the right of public navigation and fishing. The rights of navigation and fishing go together in such waters. Sloane v. Biemiller, 34 O. S., 493, followed and approved.

\* As modified and approved by the Supreme Court, 57 O. S. 226.

**4.** INJUNCTION LIES FOR VIOLATION OF SUCH RIGHTS.

For the violation of the rights of such ownership, as, for example, those of hunting and trapping, the law affords no adequate remedy and injunction lies.

APPEAL from the Court of Common Pleas of Ottawa county.

The issues and facts are stated by the court.

HAYNES, J.

This cause coming into this court upon appeal from the court of common pleas of this county, and the court finding that the appeal has been perfected in all respects as required by law, came on to be heard upon the pleadings and the evidence and was duly submitted to the court, and the court being fully advised in the premises does find the equities of the case to be with the plaintiff, and on request of all the parties to this action that the conclusions of facts be stated separately from its conclusions of law, find, as its conclusions of facts, to-wit:

First—That said sections mentioned in the petition as 21, 22, 23, 24 and 25 are situated in Ottawa county, and that the other sections mentioned in the petition lie to the south of the same and are situated in Sandusky county, Ohio. Sections 21, 22, 23, 24, 25, 26, 27, 28, 33, 34, 35 and 36 all lie adjoining and comprise an area of twelve square miles, being four miles east and west and three miles north and south; that said sections situated in Ottawa county are numbered from the west to the east consecutively, beginning with sec. 21, and beginning with sec. 25 the numbers run consecutively to the west, ending with sec. 28, and beginning with sec. 33, south of sec. 28, the numbers run consecutively to the east, ending with sec. 26; sec. 25 is south of sec. 24, and that a large portion of said twelve square miles is covered with water.

Second—The points of land and marsh, the water indentations into the land and marsh, the marshes and shoals, islands, bodies of water and other features within this area of twelve square miles, have local names located and described as follows, to-wit: "Horseshoe Island," which is situated in the southeast quarter of sec. 20 lying west of said sec. 21, which is surrounded by water.

"Bixler's Point," which is the southwestern point of a strip of land and marsh running from the southwestern quarter of sec. 21 northeast to the northwest quarter of sec. 22, which is surrounded by water.

"Winous Point," which is the southeastern point of an irregular body of land and marsh lying mostly in the southern half of sec. 22, which is surrounded by water.

"Long Grass or Canvas Back Point" is a point of land and marsh extending south from the northeast quarter of sec. 23, into the southeast quarter of said section.

"Slade's Point" is a small point of land extending from the main land in the southwest quarter of sec. 13, and which is a little west of north from south of Eagle Island.

"Eagle Island" is situated in sec. 24, entirely surrounded by water, and as originally surveyed by the United States government, contained about 144 acres, but now contains about three acres, and is situated near the center of the south half of sec. 24.

"Nigger Head Island" is situated on the section line between secs. 23 and 24, and west of Eagle Island and is smaller than Eagle Island.

"Peach Island" is situated on the north half of sec. 26, and is separated from a similar body of land and marsh lying to the east and

south by a stream called Tommy Creek; this body of land and marsh. lying to the east and south of Tommy Creek is much larger than Peach Island and is situated in the east part of sec. 26, the southwest part of sec. 25, the northwest part of sec. 36 and the northeast part of sec. 35, and is separated from the main land at the southeast by a stream called Raccoon Creek, and the most northeastern point is called "South Point," and this "South Point" is a little west of south of Eagle Island.

"Cape Island" is a small point of land and marsh above the water, situated in the northwest quarter of sec. 26, and around about it in this, quarter section the water is not so deep and is called the "Middle Ground."

"Squaw Island" is situated in the northeast quarter of sec. 27, and is smaller than Eagle Island.

"Mud Creek Bay" is the name of that body of water lying west of a line drawn from Winous Point to Squaw Island.

"Eagle Island Marsh" is a small marshy bog upon which rushes grow above the water, and lies a short distance east of Eagle Island in Sandusky Bay.

Third—Commencing at Slade's Point, the shore runs southwesterly to Canvas Back or Long Grass Point, thence north in a general direction by irregular courses to about the north line of sec. 23; thence westerly to nearly the northwest corner of sec. 22 thence southwesterly to about the southwest corner of the northwest quarter of sec. 21, thence curving southerly and easterly in the southwest quarter of sec. 20, and the northeast quarter of sec. 29; thence easterly through the north half of sec. 28 and sec. 27, to a point a little west of south of Squaw Island, where it meets the Sandusky river; commencing then at a point south of Squaw Island on the south side of Sandusky river, the shore runs and curves southwesterly, easterly and northerly, in secs. 27, 34, 35, 36, 26 and 25, by irregular courses to said South Point; thence southeasterly for about two miles; thence easterly. This shore line is well defined and the land back of it for considerable distance is marsh lands. and subject to overflow in high water, caused by the rise of the water in Lake Erie and Sandusky Bay. The Sandusky river enters sec. 28 at the southwest corner and flows east of north to about the center of the north half of said section, where it bends and flows southeasterly to the southwest quarter of sec. 27, where it bends and flows north and east toward Squaw Island, and between the course of said river thus described and the so called Mud Creek Bay to the north, there is land and marsh upon parts of which trees grow, and through which channels are cut from the river to said Mud Creek Bay. Mud Creek enters sec. 29 in the north half, and flows through the north half of said section, and on either side of said creek, in the northeast quarter of said sec. 29, the shore is low and marshy.

Fourth—Mud Creek is a small stream which rises many miles west and flows in a northeasterly direction and for several miles up stream from its mouth it is navigable for ordinary sized water craft. When said Mud Creek reaches the northeast quarter of sec. 29, west of sec. 28, it opens out into a wider expanse of water, called Mud Creek Bay, which is from one and one-fourth miles long east to west, and in width varies from one mile near its west end to about one-half mile at its narrowest point between Winous Point and Squaw Island. The course of Mud Creek is defined by banks until it reaches the northeast quarter of said sec. 29, where it enters the wide water aforesaid, and from there downward

in its course there are no banks except the shore lines of the so-called Mud Creek Bay, and there is a channel to this Mud Creek leading easterly through the so-called Mud Creek Bay which is some deeper than the water on either side and which is wide enough for the passage of ordinary water craft out to a point a little east of a line from Squaw Island to Winous Point, where it empties into another channel hereinafter mentioned. The channel of Mud Creek through Mud Creek Bay has a depth of about seven feet, and from each way the water shoals to a depth of four feet or less near the shores, which are low and marshy. Boats can pass over the waters of this Mud Creek Bay outside of this channel, and in the spring season of each year there is nothing to indicate this channel in Mud Creek Bay, but from June until about the first of October eel grass comes up to the surface of the water, and marks the channel and current caused by the flow of the water of Mud Creek downward through this wide expanse of water to the point above referred to.

Fifth—The Sandusky river is a much larger stream than Mud Creek, and as far up its course as Fremont, a distance of above twenty miles, it is navigable for ordinary sized water craft. The banks of this river, at about where it enters the southwest quarter of sec. 28, become low and marshy, and when it reaches a point south and near Squaw Island, in the southwest quarter of the northeast quarter of sec. 27, it opens into a wide expanse of water and no banks appear above water to define its channel or current in its course downward to Sandusky Bay. This river is joined by another small stream called South Creek, through its right bank in sec. 27, southeast of Squaw Island. In the spring season of each year there is nothing to define the channel or current of the Sandusky river from a point where its banks disappear, aforesaid mentioned, on out into Sandusky Bay, except buoys stationed by the United States government to mark this channel for the use of navigation. But from about the first of June to about the first of October of each year eel grass comes up to the surface of the water along and back from the margins of this channel, and in some places rice and rushes come up above the surface of the water, and during such seasons of the year this channel, from where the banks of the river disappear as aforesaid on out the entire distance to the Sandusky Bay and for a distance of about one mile into the bay, is well defined. The channel of the Sandusky river is considerably deeper than the water outside of this channel and outside of this channel or either side thereof, the water is navigable for small boats, and the water shoals from this channel on either side uniformly to the shores.

Sixth—Commencing at the point where the banks of Sandusky river become submerged, aforesaid mentioned, the channel and current of this river run in a northerly direction, between Squaw Island on the west and Peach Island, Cape Island and the Middle Ground on the east, and just as it passes the Middle Ground the aforesaid channel of Mud Creek is connected with said channel of the Sandusky river, and at this point the channel of the Sandusky river turns sharply to the east and runs along the northern margin of the Middle Ground till it reaches a point between Canvas Back or Long Grass Point on the north, and west end of Eagle Island on the south, where the channel separates into two channels, one of which turns and flows northeasterly and empties into the Sandusky Bay between Slade's or Slate's Point on the north and a point at the east end of Eagle Island on the south, and the other channel turns and runs southeasterly from the point of separation, along the

easterly margin of the Middle Grounds and empties into the Sandusky Bay between the east end or near the east end of Eagle Island on the north and South Point on the south. There is a slight current coming down Mud Creek and the Sandusky river following these channels to the junction aforesaid, and thence following the channel from the junction of the same on out to the said point of separation, and thence following both of said channels out into the Sandusky Bay. The channel of the Sandusky river from a point about the east end of Eagle Island for some distance through the bar and out into the bay has been dredged and improved by the United States government for the purposes of navigation in connection with Lake Erie and Sandusky Bay.

Seventh—The channel of the Sandusky river is considerably deeper than the channel of Mud Creek, and from a point between Squaw Island and Peach Island to the west end of Eagle Island has a uniform width of about six hundred feet, and an average depth of from eight to ten feet and is a natural channel.

Eighth—The expanse of water on either side of the channel of the Sandusky river below Squaw Island and also the expanse of water on either side of the channel from said junction west through Mud Creek Bay has a depth which shoals uniformly to the shores, except the Middle Grounds which are of less depth, the average depth of the Middle Ground at ordinary stages of the water being from three to four feet. A part of this expanse of water is a channel known as "Cape Island Channel" between the Middle Ground and Cape Island on the north and Peach Island on the south, through which a portion of the waters coming down the Sandusky river leaves the main channel and flow eastward, and rejoins the waters of the river again at or near its southern mouth and thence empties into Sandusky Bay. This channel is only three or four feet deep and in summer and autumn is covered over with reeds, rushes and other low-land vegetation.

Ninth—Between Squaw Island and the adjacent land on the west is a channel which at first was an artificial channel, but which has been enlarged by the action of the water to a considerable width, and to a depth of four or five feet, through which some of the waters of the Sandusky river pass into Mud Creek Bay, and thence join again the main channel of the river, but the main body of the water united with South Creek near Peach Island and Squaw Island, retains its current and flow and follows the channel to its mouth in the Sandusky Bay.

Tenth—At and beyond the northeasternmost mouth of said channel is a bar formed by the deposits from the waters of the river as they mingle with the waters of Sandusky Bay. The channel has been kept open through this bar by dredging at different times. The channels of said Mud Creek and Sandusky river are always clear of vegetation and in summer months and early autumn their limits are defined by the rushes, reeds and other low-land and marsh vegetation, which grows more or less over all the other portions of these waters. But in the spring of the year all that territory from Squaw Island on the south and Horseshoe Island on the west, eastward out to Lake Erie, except the islands, is open water.

Eleventh—Mud Creek Bay, Sandusky river, for several miles up its channel and all the waters in question in this case and the waters in sec. 20 lying west of sec. 21, rise and fall with the waters of Sandusky Bay and Lake Erie, the heavy southwest winds will cause said waters to fall from two to three feet below the ordinary stage, and heavy northeast winds

will cause the waters of Lake Erie and Sandusky Bay to back up and thereby raise these waters from two to three feet, and when the water is the highest, it sets back from the shore considerable distance and over the islands and marsh points, so that a greater part of them can be passed over with row boats, and when the water is the lowest some of these marsh islands and points are dry. When the winds blow from the northeast, the waters are set back in a full volume from the bay the entire width. When there are no disturbing causes the waters flow in the channel sufficient to carry off the water coming down the river.

Twelfth—The larger portion of said territories are well adapted for fishing, hunting and the harboring and protection of fish and game, and large quantities of fish, frogs, wild ducks, wild geese, turtles and other wild game abound in said waters and are fit for food, and said lands derive their chief value from their adaptation to the sports of hunting and fishing and to the harboring and protection of fish and game.

Thirteenth—Plaintiff is a corporation duly incorporated and existing under the laws of the state of Ohio, and has a legal title in fee simple to, and at the commencement of this action and for about eight years prior thereto, it was, and it still is, in the actual possession of all the lands, islands, marshes, shores and waters mentioned and described in its petition.

Fourteenth—And that at the commencement of this action, the defendants claimed no interest in or to any part of the lands, islands or marshes described in said petition and did not claim to have possession of any part of the same, but they were claiming that the Sandusky river terminated at or near Squaw Island, and that all of the waters lying to the north and west and covering the lands described in said petition are a continuation of Sandusky Bay and are public waters. and that, as members of the public, they had a right to enter upon any of said waters, at will, and to set fish nets in said waters and drive stakes into the soil under said waters, and to hunt ducks, geese, frogs, turtles and other wild game, in, upon and over said waters, and to capture, kill and remove the same from said waters, and all of which the defendants do still claim; and that, prior to the commencement of this action, the defendants at divers time had entered upon said waters, and set fish nets therein and driven stakes into the soil under said waters to anchor said nets, and had shot, captured and killed and removed from said waters fish, ducks, frogs, turtles and other wild animals and game abounding therein and over said waters, and, at the commencement of this action the defendants were threatening and still do threaten to enter upon those waters covering the lands described in the petition which lie north, east and west of Squaw Island, heretofore mentioned as the point where said Sandusky river enters wide water and also heretofore mentioned as the point where defendants claim said Sandusky river terminates, and set fish nets therein, and anchor the same to the soil under said water, and catch fish therefrom, and to hunt, pursue, shoot at, shoot, capture, kill and remove from said waters, and from over said waters, any and all kinds of game and animals whatsoever against the will and without the consent of the plaintiff, and at their own will and pleasure; and that said threatened acts of defendants are of a continuous and constantly recurring nature on the part of said defendants; and that the plaintiffs have no adequate remedy at law or in a suit for damages.

And as its conclusions of law, upon the facts found, the court finds:

First—That body of water claimed by the defendants to be a continuation of the Sandusky Bay, is not such continuation of said bay, but the same are waters of the Sandusky river and Mud Creek; that said Mud Creek and Sandusky river flow through the lands described in the plaintiff's petition, and that said Mud Creek empties into Sandusky river upon the lands of plaintiff described in its petition, and from this junction, said Sandusky river flows easterly and empties into Sandusky Bay at a line commencing at Slade's or Slate's point in the southwest quarter of sec. 13, in town six, range sixteen, in Ottawa county, Ohio, and running thence east of south to the east end of Eagle Island in sec. 24, lying south of said sec. 13, and running thence west to south to a point called "South Point," situated in about the center of the southwest quarter of the northwest quarter of sec. 25 lying south of said sec. 24.

Second—That all those waters lying west of said line drawn from Slade's Point to a point at the east end of Eagle Island and thence to "South Point" covering the lands described in the plaintiff's petition are owned by the plaintiff, and it is entitled to every beneficial use and enjoyment thereof, and the defendants have no lawful right to enter upon any of said waters, without the consent of the plaintiff for any purpose whatever, except to navigate said waters.

Third—That the plaintiff has no adequate remedy at law for the grievances threatened by the defendants.

It is, therefore, considered and decreed that each of the defendants be, and they hereby are, perpetually enjoined from entering, attempting to enter upon, or threatening to enter upon, any of the waters covering the lands described in the plaintiff's petition which lie west of a line drawn from "Slade's or Slate's Point," situated in the southwest quarter of sec. 13, in town six, range sixteen, in Ottawa county, Ohio, and running thence to the east end of Eagle Island, in sec. 24, lying south of said sec. 13, and running thence to "South Point," situated in about the center of the southwest quarter of the northwest quarter of sec. 25, lying south of said sec. 24, in Sandusky county, Ohio, for the purpose of setting fish nets or fishing in said waters, or for the purpose of hunting, shooting at, shooting, capturing, killing in any manner and removing any wild ducks, wild geese, turtles, frogs or other wild game or animals from said waters or from over said waters, and from any and all other purposes whatsoever, except to navigate said waters, and they are hereby perpetually enjoined from entering upon any of said lands, shores, marshes and islands therein, for any of the purposes aforesaid or any other purpose whatsoever, without the consent of the plaintiff, and while navigating any of said waters they are hereby perpetually enjoined from shooting, shooting at, capturing, killing, taking and removing, in any manner, by any means or device, any fish, frogs, turtles, wild geese, wild ducks, or other wild animals or wild game being in upon or over said waters or shores, or islands or marshes, and each of said defendants is hereby perpetually enjoined from ever claiming or asserting any right to enter or be upon said lands, marshes, islands, waters and shores, for such purposes prohibited by this decree, and that the plaintiff's title in and to all of said lands, marshes, shores, islands and waters described in its petition which lie west of the line aforesaid described, as against each of said defendants, is hereby forever quieted, but nothing herein construed shall prohibit the defendants to exercise the public right of navigation in said waters.

It is further considered that the defendants pay the costs of these proceedings and that a special mandate be sent to the court of common pleas to carry this judgment into execution.

*George A. True* and *C. J. York*, attorneys for plaintiffs in error.

*S. R. Harris, E. G. Love* and *J. R. Bartlett*, attorneys for defendant in error.

The following is a copy of the Journal Entry in the Supreme Court, made at the January Term, 1897, October 5:

"On consideration whereof, this court finds that there is error in the order and judgment of the circuit court in this, to-wit, in enjoining the the defendants below from setting fish nets and fishing in the waters described in said order of injunction, and removing fish therefrom, and so much of said judgment is hereby reversed. In all other respects said judgment of injunction is affirmed."

The topography of the premises mentioned in the foregoing report will be understood by the accompanying map, copied from the files of the original papers:

# HUNTING AND FISHING GROUNDS
## OF
## THE WINOUS POINT SHOOTING CLUB.

